UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JOSEPH A. WARREN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 1:15-cv-202 |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Joseph A. Warren, on August 4, 2015.[2] For the following reasons, the decision of the Commissioner is **REMANDED**.

*Background*

The plaintiff, Joseph A. Warren, filed an application for Disability Insurance Benefits on July 20, 2012, alleging a disability onset date of January 6, 2010. (Tr. 12). The Disability Determination Bureau denied Warren's application on October 29, 2012, and again upon reconsideration on December 19, 2012. (Tr. 12). Warren subsequently filed a timely request for a hearing on January 23, 2013. (Tr. 12). A hearing was held on January 9, 2014, before Administrative Law Judge (ALJ) Maryann S. Bright (ALJ), and the ALJ issued an unfavorable

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] On January 8, 2016, this case was reassigned to Magistrate Judge Susan L. Collins upon the parties' consent under 28 U.S.C. § 636(c), and then was reassigned to Magistrate Judge Andrew P. Rodovich. On August 5, 2016, the court ordered the parties to file any objection to Magistrate Judge Rodovich conducting all further proceedings in this case. Because neither party filed an objection, this court finds that the parties voluntarily consent to Magistrate Judge Rodovich under 28 U.S.C. § 636(c).

decision on February 26, 2014. (Tr. 12-27). Vocational Expert (VE) Marie N. Kieffer, Warren's wife, Deanna Warren, and Warren testified at the hearing. (Tr. 12). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–8).

The ALJ found that Warren met the insured status requirements of the Social Security Act on December 31, 2013. (Tr. 14). At step one of the five step sequential analysis used to determine whether a claimant is disabled, the ALJ found that Warren had not engaged in substantial gainful activity during the period from his alleged onset date of January 6, 2010 through his date last insured of December 31, 2013. (Tr. 14). At step two, the ALJ determined that Warren had the following severe impairments: abdominal aortic aneurysm, history of pulmonary embolism, and generalized anxiety disorder. (Tr. 14). The ALJ only briefly discussed Warren's degenerative disc disease, obesity, COPD, history of rectal fistula surgery, and history of pelvic tumor removal given the lack of evidence that these conditions caused more than a minimal limitation in Warren's ability to perform basic work activities. (Tr. 14). The ALJ indicated that all medically determinable impairments were considered in combination throughout her decision. (Tr. 14).

At step three, the ALJ concluded that Warren did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 15). In determining whether Warren had an impairment or combination of impairments that met the severity of one of the listed impairments, the ALJ considered that Warren's representative did not argue that Warren's impairments met or equaled a listing and that no treating or examining physician indicated a finding that would equal a listed impairment. (Tr. 16).

Specifically, the ALJ found that Warren did not meet Listing 4.10, Aneurysm of Aorta or Major Branches. (Tr. 16). The ALJ indicated that pulmonary emboli did not have a specific

listing, so she considered the listings for equivalence and found that no equivalence existed. (Tr. 16). The ALJ found that the objective evidence showed no evidence of cardiovascular disease and that Warren's pulmonary function tests showed only a mild obstructive defect. (Tr. 16). Furthermore, the condition was resolved within a few months after identification. (Tr. 16).

The ALJ also found that Warren did not meet Listing 12.06, Anxiety and Obsessive Compulsive Disorders. (Tr. 16). She considered the paragraph B criteria for mental impairments, which required at least two of the following:

> marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.

(Tr. 16). The ALJ defined a marked limitation as more than moderate but less than extreme and repeated episodes of decompensation, each of extended duration, as three episodes within one year or once every four months with each episode lasting at least two weeks. (Tr. 16).

The ALJ found that Warren had mild restrictions in daily living activities. (Tr. 16). Warren reported in his function report that he performed personal care tasks, prepared simple meals, mowed the lawn with a riding mower, went out alone, and drove. (Tr.16). Also, he indicated to his consultative examiner that he washed dishes twice a week and drove his son to school. (Tr. 16).

The ALJ found that Warren had moderate difficulties in social functioning. (Tr. 16). Warren testified that he had difficulty being around crowds and did not like to be in public places like grocery stores. (Tr. 16). However, he indicated that he did not have difficulty being around his family. (Tr. 16). Additionally, the ALJ noted that despite Warren being anxious during the consultative examination he made good eye contact, interacted appropriately, and was able to put forth a good effort during the testing. (Tr. 16). The ALJ noted that Warren had not received

3

significant treatment for panic attacks or social anxiety other than medication from a primary care provider. (Tr. 16).

The ALJ found that Warren had moderate difficulties in concentration, persistence, or pace. (Tr. 16). Warren testified that he had panic attacks, experienced pain on a daily basis, and frequently took naps during the day. (Tr. 16). However, the ALJ indicated that Warren completed EMT training in 2011. (Tr. 16). Also, the ALJ indicated that Warren drove, took his son to school, and prepared simple meals. (Tr. 17). Dr. Wade reported that Warren had poor concentration, demonstrated by his difficulty performing serial seven subtractions. (Tr. 16-17). The ALJ indicated that there was no other significant clinical findings to support Dr. Wade's finding that Warren had poor concentration. (Tr. 17). Moreover, the ALJ noted that Dr. Wade reported that Warren likely had adequate understanding and fair memory of task instructions. (Tr. 17).

The ALJ also relied on State agency psychological consultants, J. Gange, Ph.D., and F. Kladder, Ph.D., who considered the paragraph B criteria and found that Warren had mild restrictions in daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation, each of extended duration. (Tr. 17). The ALJ concluded that the opinions of Drs. Gange and Kladder were entitled to great weight after their review of the record because based on their knowledge they provided credible medical opinions. (Tr. 17). The ALJ found that the opinions were not contradicted by evidence at the hearing and were consistent with the ALJ's paragraph B analysis. (Tr. 17).

The ALJ found that Warren did not satisfy the paragraph B criteria because his mental impairments did not cause at least two marked limitations or one marked limitation and repeated

episodes of decompensation. (Tr. 17). Additionally, she concluded that Warren did not satisfy the paragraph C criteria because he did not experience any repeated episodes of decompensation of extended duration, he had mild limitation regarding activities of daily living, and there was no evidence that he required a highly supportive living arrangement. (Tr. 17). The State agency psychological consultants also concluded that no evidence existed that Warren satisfied the paragraph C criteria. (Tr. 17).

The ALJ then assessed Warren's residual functional capacity (RFC) as follows:

> the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) in that the claimant could lift and/or carry up to twenty (20) pounds occasionally and up to ten (10) pounds frequently, could stand and/or walk for about 6 hours and could sit for about 6 hours during an eight-hour workday, except: the claimant could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs, but he could never climb ladders, ropes, or scaffolds; the claimant had to avoid concentrated exposure to temperature extremes, wetness and humidity, unprotected heights, and pulmonary irritants such as dust, odor, fumes, gases, and poor ventilation; the claimant was able to perform simple, routine, repetitive tasks consistent with unskilled work and was able to sustain and attend to tasks throughout the workday; the claimant was limited to superficial interaction with coworkers, supervisors and the public, with superficial interaction defined as occasional and casual contact not involving prolonged conversation or discussion of involved issues, however, contact with supervisors still involved necessary instruction; and the claimant was limited to low stress work, defined as requiring only occasional decision making and only occasional changes in the work setting.

(Tr. 18). The ALJ explained in considering Warren's symptoms she followed a two-step process. (Tr. 18). First, she determined whether there was an underlying medically determinable physical or mental impairment that was shown by medically acceptable clinical and laboratory diagnostic techniques that reasonably could be expected to produce Warren's pain or other symptoms. (Tr. 18). Then she evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Warren's functioning. (Tr. 18).

Warren testified that he experienced fatigue and shortness of breath when he stood and walked. (Tr. 19). Also, he testified that he developed anxiety in public places and that he had panic attacks on a daily basis. (Tr. 19). Warren indicated that he had hip and low back pain, but that he had not received treatment nor reported the conditions to his physicians. (Tr. 19). He stated that he could walk about 300 feet and sit about 30 minutes. (Tr. 19). Warren testified that two physicians assigned a ten pound lifting limitation. (Tr. 19). Counsel for Warren indicated that she was uncertain if his lifting limitation was documented in the medical evidence. (Tr. 19).

The ALJ noted that despite Warren's alleged impairments he testified that he drove, took his son to school, performed personal care tasks, prepared meals, and traveled to Florida every other year. (Tr. 19). The ALJ concluded that Warren's medically determinable impairments reasonably could cause the alleged symptoms, but she found his statements concerning the intensity, persistence, and limiting effects of the symptoms not entirely credible. (Tr. 19).

The ALJ indicated that the record showed no significant evidence of any condition until the claimant's lumbar spine MRI in August 2010. (Tr. 19). The ALJ noted that in December of 2010 Warren sought care from Christian Sessa, D.O., for anxiety that had lasted two weeks. (Tr. 19). Dr. Sessa reported that Warren was scared and anxious about his upcoming fistula surgery and diagnosed him with severe anxiety for which he prescribed Zoloft and Xanax. (Tr. 19). After Warren underwent his fistulotomy and placement of a draining seton, he returned to Dr. Sessa and reported that the Xanax was working and that his anxiety had improved. (Tr. 20).

In January of 2010, Warren received emergency treatment for chest pain. (Tr. 20). A physical examination was performed and revealed no cardiac or respiratory findings. (Tr. 20). A CT scan of Warren's chest showed bilateral pulmonary emboli, and he was started on anticoagulant treatment, including coumadin therapy. (Tr. 20). Warren reported at his primary

care follow-up that his coumadin treatment seemed to being working. (Tr. 20). Dr. Sessa noted in the psychiatric findings that Warren was better. (Tr. 20).

Warren's chest showed no evidence of pulmonary embolism by March 2011. (Tr. 20). From April to December of 2011, Warren remained on anticoagulant therapy. (Tr. 20). The record showed no significant complaints or clinical findings of functional limitations resulting from any alleged impairment. (Tr. 20). In December of 2011, Warren had additional cardiac testing. (Tr. 20). A CTA of Warren's chest revealed a mild fusiform ascending aortic aneurysm, without evidence of coarctation or dissection. (Tr. 20). The record did not specify functional limitations related to the aneurysm, however his anticoagulant therapy was suspended as a result. (Tr. 20).

In January 2012, Warren was evaluated by cardiologist Joseph Greenlee, III, M.D. (Tr. 20). The evaluation indicated no evidence of cardiac disease and edema or neurological deficits. (Tr. 20). Dr. Greenlee indicated that Warren was in good health and that there was no evidence of significant hypertension. (Tr. 20). The ALJ reported that from January through August the record showed that Warren's treatment was primarily for anxiety and edema. (Tr. 21). In August 2012, Warren underwent testing that showed no abnormal findings to support the severity of his alleged symptoms. (Tr. 21).

Warren was evaluated by psychological consultative examiner, Stefanie Wade, Psy.D., in October of 2012. (Tr. 21). Warren reported that he had experienced anxiety. (Tr. 21). Also, he claimed that he experienced panic attacks when he had shortness of breath from scar tissue in his lungs. (Tr. 21). However, the ALJ noted that Warren's chest x-rays failed to demonstrate any scarring. (Tr. 21). Dr. Wade noted that Warren had symptoms consistent with an anxiety

7

disorder. (Tr. 21). However, the ALJ found that Dr. Wade's evidence consisted solely of Warren's subjective complaints of fear, worry, panic attacks, and poor concentration. (Tr. 21).

At the mental status examination Dr. Wade found that Warren appeared anxious, but that he was cooperative, made good eye contact, attentive, and put forth a good effort. (Tr. 21). Dr. Wade indicated that Warren was unable to perform serial seven subtractions but could perform simple arithmetic calculations. (Tr. 21). Therefore, she diagnosed him with generalized anxiety disorder and assigned a Global Assessment Functioning (GAF) score of 51, which indicated moderate difficulty in social, occupational, or school functioning. (Tr. 21). The ALJ stated that the GAF score was not helpful because it was a snapshot based on a single evaluation and provided a vague assessment without correlation to specific, work-related mental tasks. (Tr. 21).

Warren later was evaluated by consultative examiner, Scott Ehmen, M.D. (Tr. 21). Dr. Ehmen found that Warren was short of breath with a brisk pace and when bending to tie his shoes. (Tr. 21). He indicated that Warren's breathing was not labored and that his lungs were clear to auscultation with no evidence of chest discomfort. (Tr. 21). Warren underwent a follow-up EKG in December of 2012 that showed some concentric left ventricular hypertrophy remained but that his ejection fraction still was 65%. (Tr. 22). Warren complained of palpitations, but Dr. Greenlee's cardiac examination noted regular rate and rhythm. (Tr. 22). Moreover, the ALJ noted that Warren was able to travel to Florida in January despite his complaints. (Tr. 22).

Warren sought emergency treatment in June of 2013 for shortness of breath. (Tr. 22) The attending doctor, Timothy Schroer, D.O., characterized Warren's condition as mild. (Tr. 22). The ALJ indicated that the nursing assessment reported that Warren did not complain of chest pain and that his pulse was normal. (Tr. 22). Dr. Schroer noted that Warren's mood and

8

affect were normal. (Tr. 22). Warren had no motor or sensory deficits, no tenderness or edema in any extremity and full range of motion, no evidence of pulmonary embolus, and his lungs were free of pleural or parenchymal disease. (Tr. 22). He displayed some tachycardia, but it was attributed to the discontinuation of his beta-blocker. (Tr. 22).

The ALJ noted that there were no detailed clinical findings that helped evaluate the nature or severity of Warren's impairments. (Tr. 22). The ALJ acknowledged Warren's frequent medical treatment but indicated that his medical records provided little evidence of functional limitation due to any condition. (Tr. 22). Also, the ALJ found that the record was devoid of substantive treatment for his complaints of anxiety. (Tr. 22). The ALJ concluded that Warren's complaints of the severity of his symptoms were not supported by the objective evidence to the degree he alleged. (Tr. 23).

The State agency medical consultants, J. Sands, M.D., and Jerry Smartt, Jr., M.D. found that Warren retained the capacity to perform work at a light exertional level, along with postural and environmental limitations consistent with the RFC. (Tr. 23). The ALJ noted that Warren's pulmonary embolism resolved within months and that his mild ascending aortic aneurysm was stable. (Tr. 23). She also found that the record did not show significant evidence of shortness of breath and tremors in his upper extremities. (Tr. 23). The ALJ noted that no treating or consultative examining physicians made any finding or functional limitation that contradicted Drs. Sands and Smartt. (Tr. 23). Therefore, the ALJ concluded that their opinions were entitled to great weight. (Tr. 23).

The State agency psychological consultants, J. Gange, Ph.D., and F. Kladder, Ph.D., found that Warren was able to perform semi-skilled work in an environment with limited social interaction. (Tr. 23). The ALJ noted that Warren had a long history of anxiety but that his

9

treatment was limited to medication prescribed by a primary care provider. (Tr. 23). Also, the ALJ indicated that there was no evidence that Warren underwent therapy, counseling, or other mental health treatment. (Tr. 23). Dr. Wade indicated that Warren would have difficulty sustaining activities of daily living, but the ALJ found that her conclusion was based on subjective complaints. (Tr. 23). Also, Dr. Wade's clinical findings failed to support her suggested level of limitation. (Tr. 23). The ALJ found that the State agency psychological consultants were entitled to great weight. (Tr. 23). The ALJ noted that to accommodate Warren's hearing testimony regarding his anxiety she limited him to unskilled tasks. (Tr. 23).

The ALJ assigned little weight to Dr. Ehmen's opinion because it was based on a single evaluation. (Tr. 23). Also, Dr. Ehmen's assertion that Warren could lift only five to ten pounds lacked support from the record, and his observation of shortness of breath and tremors were not clinically documented in the record consistently. (Tr. 23). Also, the ALJ noted that Dr. Ehmen found that Warren had a steady gait at normal speed with no deficits in strength or range of motion. (Tr. 24). Therefore, the ALJ concluded that there was no objective evidence to support the severity of Dr. Ehmen's limitations. (Tr. 24).

The ALJ assigned little weight to Dr. Wade's opinion. (Tr. 24). Dr. Wade found that Warren's ability to sustain daily activities was limited and that he had poor concentration and limited stress tolerance. (Tr. 24). The ALJ indicated that Dr. Wade's clinical findings did not support her opinion and that it was based largely on subjective complaints. (Tr. 24). Again the ALJ noted that Warren reported that he drove, traveled to Florida, got his children to school, and completed EMT training, which the ALJ indicated was suggestive of a lesser degree of symptom severity than Dr. Wade's opinion. (Tr. 24).

10

At step four, the ALJ found that Warren could not perform his past relevant work. (Tr. 25). Considering Warren's age, education, work experience, and RFC, the ALJ concluded that there were jobs in the national economy that he could perform, including electrical accessories assembler (660 jobs regionally, 24,000 jobs nationally), small products assembler (1,200 jobs regionally, 53,000 jobs nationally), and electronics worker (2,400 jobs regionally, 100,000 jobs nationally). (Tr. 26).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); ***Moore v. Colvin***, 743 F.3d 1118, 1120–21 (7th Cir. 2014); ***Bates v. Colvin***, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence."); ***Pepper v. Colvin***, 712 F.3d 351, 361–62 (7th Cir. 2013); ***Schmidt v. Barnhart***, 395 F.3d 737, 744 (7th Cir. 2005); ***Lopez ex rel Lopez v. Barnhart***, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept to support such a conclusion." ***Richardson v. Perales***, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting ***Consol. Edison Co. v. NLRB***, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see* ***Bates***, 736 F.3d at 1098; ***Pepper***, 712 F.3d at 361–62; ***Jens v. Barnhart***, 347 F.3d 209, 212 (7th Cir. 2003); ***Sims v. Barnhart***, 309 F.3d 424, 428 (7th Cir. 2002). An ALJ's decision must be affirmed if the findings are supported by substantial evidence and if there have been no errors of law. ***Roddy v. Astrue***, 705 F.3d 631, 636 (7th Cir. 2013); ***Rice v. Barnhart***,

384 F.3d 363, 368–69 (7th Cir. 2004); *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez*, 336 F.3d at 539.

Disability insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. §§ 404.1520, 416.920**. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." **20 C.F.R. §§ 404.1520(b), 416.920(b)**. If he is, the claimant is not disabled and the evaluation process is over. If he is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. §§ 404.1520(c), 416.920(c)**; *see Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of his past work. If, at this fourth step, the claimant can perform his past relevant work, he will be found not disabled. **20 C.F.R. §§ 404.1520(e),**

12

**416.920(e)**. However, if the claimant shows that his impairment is so severe that he is unable to engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of his age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1520(f), 416.920(f)**.

First, Warren has argued that the ALJ failed to incorporate her findings that he had a moderate degree of limitation in concentration, persistence, or pace into the hypothetical question posed to the VE. The ALJ's RFC assessment and the hypothetical posed to the VE must incorporate all of the claimant's limitations supported by the medical record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010)); *Indoranto v. Barnhart*, 374 F.3d 470, 473–74 (7th Cir. 2004) ("If the ALJ relies on testimony from a vocational expert, the hypothetical question she poses to the VE must incorporate all of the claimant's limitations supported by medical evidence in the record."). That includes any deficiencies the claimant has in concentration, persistence, or pace. *Yurt*, 758 F.3d at 857; *O'Connor-Spinner*, 627 F.3d at 619 ("Among the limitations the VE must consider are deficiencies of concentration, persistence and pace."); *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (indicating that the hypothetical question "must account for documented limitations of 'concentration, persistence, or pace'") (collecting cases). The most effective way to ensure that the VE is fully apprised of the claimant's limitations is to include them directly in the hypothetical. *O'Connor-Spinner*, 627 F.3d at 619.

However, ALJs do not need to state explicitly "concentration, persistence, or pace" in the hypothetical for all cases. *Yurt*, 758 F.3d at 857; *O'Connor-Spinner*, 627 F.3d at 619. Rather, a court may assume a VE's familiarity with a claimant's limitations, despite deficiencies in the

hypothetical, when the VE independently reviewed the medical record or heard testimony directly addressing those limitations. *O'Connor-Spinner*, 627 F.3d at 619; *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009). This exception does not apply if the ALJ poses a series of increasingly restrictive hypotheticals because courts infer that the VE's attention is focused on the hypotheticals and not the record. *O'Connor-Spinner*, 627 F.3d at 619; *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004). The ALJ posed a series of increasingly restrictive hypotheticals. (Tr. 71-75). Therefore, this exception does not apply.

An ALJ's hypothetical may omit "concentration, persistence, or pace" when it is clear that the ALJ's phrasing specifically excluded tasks that someone with the claimant's limitations could not perform. *O'Connor-Spinner*, 627 F.3d at 619. Courts also may uphold a hypothetical that does not mention "concentration, persistence, or pace" when the underlying conditions were mentioned and the link between the underlying condition and the concentration difficulties was apparent enough to incorporate those difficulties by reference. *See Simila*, 573 F.3d at 521–22 (upholding the hypothetical but indicating the failure to include the specific limitations was "troubling"). Courts have upheld hypotheticals that restricted a claimant to low-stress work when the limitations were stress or panic related. *See Johansen v. Barnhart*, 314 F.3d 283, 285, 288–89 (7th Cir. 2002) (upholding a hypothetical formulated in terms of "repetitive, low-stress" work because the description eliminated positions likely to trigger symptoms of the panic disorder that originated the claimant's moderate limitations in concentration, persistence, or pace); *Arnold v. Barnhart*, 473 F.3d 816, 820, 823 (7th Cir. 2007) (upholding a hypothetical that restricted claimant to low-stress, low-production work when stress-induced headaches, frustration, and anger caused the claimant's difficulties in concentration, persistence, or pace).

The ALJ's question to the VE limited Warren to low-stress work. Warren has argued that

14

the hypothetical limiting him to low-stress, defined as requiring only occasional decision-making and only occasional changes in work setting, dealt with workplace adaptation and failed to connect the limitations imposed to Warren's specific limitations. The Commissioner did not argue that this exception applied. Therefore, this exception does not apply.

Courts may uphold a hypothetical that does not mention "concentration, persistence, or pace" when the underlying conditions were mentioned and the link between the underlying condition and the concentration difficulties was apparent enough to incorporate those difficulties by reference. *See* **Simila**, 573 F.3d at 521–22 (upholding the hypothetical but indicating the failure to include the specific limitations was "troubling"). Generally, terms like "simple, repetitive tasks" alone do not exclude from the VE's consideration those positions that present significant problems with concentration, persistence, or pace. **Stewart**, 561 F.3d at 684–85 (finding hypothetical limited to simple, routine tasks did not account for limitations of concentration, persistence, or pace); *see* **Kasarsky v. Barnhart**, 335 F.3d 539, 544 (7th Cir. 2003) (posing hypothetical as individual of borderline intelligence did not account for limitations of concentration). The ALJ did not mention Warren's underlying conditions. Therefore, this exception does not apply.

The ALJ found that Warren had moderate difficulties in concentration, persistence, or pace. (Tr. 16). The ALJ's hypothetical included the following mental limitations:

> The individual is limited to superficial interaction with coworkers, supervisors, and the public, with superficial interacting defined as occasional and casual contact not involving prolonged conversation or discussion of involved issues. Contact with supervisors still involves necessary instruction, the individual is limited to low stress, defined as requiring only occasional decision-making and only occasional changes in the work setting. The individual is unable to engage in complex or detailed tasks, but can perform simple, routine, repetitive tasks consistent with unskilled work and is able to sustain and attend to tasks throughout the workday.

15

(Tr. 71-72). Based on the hypothetical the VE determined that Warren could not perform his past relevant work but that he could perform other work that existed in significant numbers in the national economy. (Tr. 72).

The Commissioner indicated that Drs. Gange and Kladder noted in their Mental Residual Functional Capacity Assessments that Warren was moderately impaired in four areas: the ability to maintain attention and concentration for extended periods, the ability to interact appropriately with the general public, the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and the ability to travel in unfamiliar places or use of public transportation. (Tr. 87-88). The Commissioner contends that the ALJ captured these mental limitations in the RFC and the hypothetical presented to the VE.

Warren's ability to maintain attention and concentration for extended periods was related to the ALJ's finding that he had moderate difficulties with concentration, persistence, or pace. However, his ability to interact appropriately with the general public, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and to travel in unfamiliar places or use of public transportation dealt with limitations in social interaction and adaptation. (Tr. 87-89). The Seventh Circuit consistently has held that limitations in social functioning and adaptation were not limitations in concentration, persistence, and pace. *Varga,* 794 F.3d at 815.

Drs. Gange and Kladder found that Warren had a moderate limitation in the ability to maintain attention and concentration for extended periods, therefore the most he could complete was a semi-skilled work routine. (Tr. 89, 103). The Commissioner has argued that the ALJ adequately captured that limitation in the RFC and hypothetical to the VE by limiting Warren to perform simple, routine, repetitive tasks consistent with unskilled work. (Tr. 18, 71-72). The

16

Commissioner indicated that the ALJ gave Warren more credit by finding the most he could do was unskilled work, rather than semi-skilled work.

The Commissioner concedes that the Seventh Circuit has found that "unskilled work" is unrelated to the question of whether someone with moderate limitations in concentration, persistence, or pace can do the work. *Varga,* 794 F.3d at 814. However, the Commissioner indicated that "unskilled work" is defined by regulation as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." **20 C.F.R. § 404.1568(a).** Therefore, the Commissioner contends, without citing to any authority, that a job that requires little or no judgment to do simple duties directly relates to concentration, persistence, or pace because the more simple a job is the less concertation or persistence will be required. Also, the less judgment that is needed, the less pace will be effected by decision-making.

The ALJ's hypothetical posed to the VE failed to account for Warren's limitations in concentration, persistence, or pace. Courts repeatedly have held terms like "simple, repetitive tasks" alone do not exclude from the VE's consideration those positions that present significant problems with concentration, persistence, or pace. *Stewart*, 561 F.3d at 684–85 (finding hypothetical limited to simple, routine tasks did not account for limitations of concentration, persistence, or pace); *see also Varga,* 794 F.3d at 814. This is because "the ability to stick with a given task over a sustained period" is simply "not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner*, 627 F.3d at 620. Therefore, "[t]he hypothetical must account for both the complexity of the tasks and the claimant's ability to stick with a task over a sustained period." *Warren v. Colvin,* 565 Fed. Appx. 540, 544 (7th Cir. 2014).

17

Also, the ALJ's limitation to unskilled work did not account for Warren's ability to sustain work throughout a workday or workweek. *See Yurt*, 758 F.3d at 858–59 (noting that a limitation to unskilled work does not capture limitations in concentration, persistence, and pace adequately). It has been explained that "unskilled work, which the regulations define as work that can be learned by demonstration in less than 30 days … is unrelated to the question of whether an individual with mental impairments—with difficulties maintaining concentration, persistence, or pace—can perform such work." *Varga,* 794 F.3d at 814-815.

Because the ALJ's hypothetical failed to account for Warren's limitations in concentration, persistence, or pace, she has not built an accurate and logical bridge from the evidence of mental impairments to the hypothetical and mental RFC. Therefore, this matter is **REMANDED** for further proceedings. The ALJ should include Warren's limitations in concentration, persistence, and pace in the VE hypothetical on remand.

Next, Warren has argued that the ALJ improperly evaluated the opinion of examining psychologist, Dr. Stefanie Wade. Generally, an ALJ affords more weight to the opinion of an examining source than the opinion of a non-examining source but the ultimate weight given depends on the opinion's consistency with the objective medical evidence, the quality of the explanation, and the source's specialty. *Givens v. Colvin*, 551 F. App'x 855, 860 (7th Cir. 2013); **20 C.F.R. § 404.1527(c)**. "An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). An ALJ may give less weight to an examining source's opinion when it appears to rely heavily on the claimant's subjective complaints. *Givens*, 551 F. App'x at 861; *see* **20 C.F.R. § 404.1527(c)(3)** ("The more a medical source presents relevant evidence to support an

opinion, particularly medical signs and laboratory findings, the more weight we will give the opinion. The better explanation a source provides for an opinion the more weight we will give that opinion."); *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012).

Warren has argued that the ALJ's decision to assign little weight to Dr. Wade's opinion was improper. Dr. Wade found that Warren needed some support to accomplish daily tasks, like housework, shopping, and providing reassurance, therefore his daily activities appeared limited. (Tr. 24). She indicated that Warren had poor concentration and limited stress tolerance. (Tr. 24). The ALJ found that Dr. Wade's findings were based primarily on subjective complaints and not supported by the record or her clinical findings. (Tr. 24).

The ALJ also noted that at the mental status examination Dr. Wade reported that Warren appeared anxious during the testing, but he was cooperative, made good eye contact, and put forth a good effort. (Tr. 24). Also, Warren had difficult with serial seven subtractions, but he was able to solve simple math problems. (Tr. 24). Dr. Wade indicated that Warren likely had good social interactions and would be able to manage his funds. (Tr. 24). Finally, the ALJ noted that the record indicated that Warren drove, traveled to Florida, got his children to school, and completed EMT training, therefore, these activities indicated a lesser degree of symptom severity than assessed by Dr. Wade. (Tr. 24).

Warren has argued that the ALJ failed to cite an authoritative medical source to support her findings and that such interpretation of raw medical findings without notice, deprived him the right to cross examine a fact witness, submit rebuttal evidence, and comment on witness statements. Also, Warren contends that the evidence noted by the ALJ was not substantial evidence to discount Dr. Wade's opinion. The Commissioner contends that Dr. Wade's opinion

as a whole was based on subjective complaints that were inconsistent with Warren's daily living activities.

The ALJ properly weighed Dr. Wade's opinion. The ALJ can give less weight to an examining source's opinion when that source relied heavily on the claimant's subjective complaints. *Givens*, 551 F. App'x at 861 (citing **20 C.F.R. § 404.1527(c)(3)**). The ALJ found that Dr. Wade's opinion relied heavily on Warren's subjective complaints of fear, worry, panic attacks, and poor concentration rather than on objective medical evidence. The ALJ should rely on opinions based on the objective evidence rather than subjective complaints from the claimant. *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004). The ALJ also rejected Dr. Wade's opinion because it was not well-supported by other evidence within the record.

The ALJ minimally articulated her reasoning for rejecting Dr. Wade's opinion, therefore it was proper for the ALJ to give less weight to Dr. Wade based on the above findings. However, since this matter is being remanded on a different issue the ALJ may further explain why she found the opinion inconsistent with credible evidence in the record on remand.

Based on the foregoing reasons, the decision of the Commissioner is **REMANDED** for further proceedings consistent with this order.

ENTERED this 16th day of March, 2017.

/s/ Andrew P. Rodovich
United States Magistrate Judge